IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANTHONY PRICE
4978 Just Street, NE
Washington, DC 20019

        Plaintiff,

  vs.

WELLS FARGO FINANCIAL
MARYLAND, INC.
1300 Spring Street, Suite 126
Silver Spring, MD 20910

        Defendant.

Civil Action No.: _____

JURY TRIAL DEMANDED

## NOTICE OF REMOVAL

Defendant Wells Fargo Financial Maryland, Inc. ("Wells Fargo"), through undersigned counsel, hereby removes this case from the Superior Court of the District of Columbia to the United States District Court for the District of Columbia. Wells Fargo denies the allegations in the complaint and files this notice without waiving any defenses, exceptions, or obligations that may exist in its favor in state or federal court.

## I.     STATEMENT OF COMMENCEMENT OF ACTION

On September 7, 2007, Plaintiff Anthony Price ("Plaintiff") commenced this action by filing a Complaint, Civil Action Number 0006161-07, in the Superior Court of the District of Columbia. Plaintiff served the complaint upon Wells Fargo's registered agent on September 10, 2007. Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within thirty days of Well's Fargo's first receipt of the initial state court pleading.

{B0741656}

II.    **PLEADINGS AND NOTICE TO STATE COURT**

A true and correct copy of all process and pleadings served upon Wells Fargo are attached hereto as Exhibit A and are being filed along with this Notice of Removal. Pursuant to 28 U.S.C. § 1446(d), written notice of this removal is being served on Plaintiff and filed with the Superior Court of the District of Columbia.

III.    **STATEMENT OF STATUTORY BASIS FOR JURISDICTION**

This action is within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. § 1332(a)(1). The statute provides, in pertinent part, that "[t]he district courts shall have the original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). As discussed in detail below, this action satisfies the statutory requirements for diversity jurisdiction.

IV.    **DIVERSITY JURISDICTION**

A.    **Citizenship of the Parties**

Pursuant to 28 U.S.C. § 1332(a)(1), the parties in an action based on diversity of citizenship must be citizens of different states. Section 1332(c) deems a corporation to be a citizen of the state in which it is incorporated and a citizen of the state in which it maintains its principal place of business.

In this case, Plaintiff is a citizen of the District of Columbia. (Compl. ¶ 1). Wells Fargo is incorporated in the state of Maryland and maintains its principal place of business in Silver Spring, Maryland. Thus, Wells Fargo is a citizen of Maryland. Accordingly, there is complete diversity of citizenship between both parties to this controversy.

**B.**    <u>Amount in Controversy</u>

Plaintiff claims that he was injured by Wells Fargo's alleged improper repossession of Plaintiff's automobile.  Plaintiff seeks actual and compensatory damages, punitive damages, treble damages, and declaratory and injunctive relief.  (Compl. ¶¶ 31, 45, 48, 53, 61).  The Complaint purports to state claims against Wells Fargo pursuant to the following: (1) the Maryland Credit Grantor Closed End Credit Provisions, Md. Code Ann., Com. Law § 12-1021 *et seq.*; (2) the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*; (3) the Uniform Commercial Code; (4) wrongful repossession; and (5) breach of contractual duty to act in good faith.

Plaintiff seeks to recover $75,000 in compensatory damages, treble damages, or $1,500 per violation, whichever is greater, punitive damages, injunctive relief, and attorneys fees for his CPPA claim.  The CPPA provides that a claimant may seek and recover:  (1) "treble damages, or $ 1,500 per violation, whichever is greater, payable to the consumer; (2) reasonable attorney's fees; (3) punitive damages; and (4) an injunction against the use of the unlawful trade practice."  D.C. Code § 28-3905(k).  Punitive damages may be included in a calculation for the amount in controversy.  *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 66 (D.D.C. 2002).  As one court noted, the plaintiffs bar "rarely seeks" a small amount of punitive damages, and large awards of punitive damages are not uncommon when plaintiffs claim they have been injured by a large corporation.  *Woodward v. Newcourt Commercial Finance Corp*. 60 F. Supp. 2d 530, 532 (D.S.C. 1999).

Because Plaintiff seeks punitive damages "to punish Wells Fargo and to deter it and other lenders from engaging in similar conduct," (Compl. ¶ 45), he obviously seeks the statutory maximum in punitive damages, and this satisfies the amount in controversy

requirement for diversity jurisdiction.    In addition, Plaintiff's demand for $75,000 in compensatory damages, along with his claim for treble damages and attorney's fees create an amount in controversy in excess of $75,000.

WHEREFORE Defendant Wells Fargo Financial Maryland, Inc. prays that this action be removed to the United States District Court for the District of Columbia.


DATED:  October 1, 2007

                    Respectfully submitted,


                    NELSON MULLINS RILEY & SCARBOROUGH LLP

                    By:_____
                        Anitra D. Goodman (D.C. Bar No. 484434)
                        101 Constitution Avenue, Suite 900
                        Washington, DC  20001
                        Phone: (202) 712-2891
                        Fax: (202) 712-2840
                        E-mail address:  anitra.goodman@nelsonmullins.com

                    *Counsel for Defendant Wells Fargo Financial Maryland, Inc.*


OF COUNSEL:

Matthew P. McGuire
N.C.S.B. No. 20048
Nelson Mullins Riley & Scarborough LLP
GlenLake One
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Phone:  (919) 877-3800
Fax:  (919) 877-3799
E-mail address  matt.mcguire@nelsonmullins.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true copy of the foregoing Notice of Removal was served by depositing copies thereof in a depository under the exclusive care and custody of the United States Postal Service in a postage prepaid envelope designating delivery by certified mail, return receipt requested, and properly addressed as follows:

Mark H. Steinbach, Esq.
O'Toole, Rothwell, Nassau & Steinbach
1350 Connecticut Avenue, NW
Suite 200
Washington, DC 20006

DATED:  October 1, 2007

_____
Anitra D. Goodman

# EXHIBIT  A

CA Form 1

# Superior Court of the District of Columbia
## CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

Ⓟ

| Anthony Price | |
| --- | --- |
| | *Plaintiff* |

0006161-07

VS.

Civil Action No. [          ]

| Wells Fargo Financial Maryland, Inc. | |
| --- | --- |
| | *Defendant* |

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| Mark H. Steinbach |
| --- |
| Name of Plaintiff's Attorney |

| 1350 Connecticut Ave. NW Suite 200 |
| --- |
| Address |

| Washington, DC 20036 |
| --- |

| (202) 775-1550 |
| --- |
| Telephone |

By _____
Deputy Clerk

Date        SEP 07 2007

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 93        NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ANTHONY PRICE
4978 Just Street, N.E.
Washington, D.C. 20019

       Plaintiff

v.

WELLS FARGO FINANCIAL
MARYLAND, INC.
1300 Spring Street, Suite 126
Silver Spring, MD 20910

       Serve: CSC - Lawyers Incorporating
           Service Company
           7 St. Paul Street, Suite 1660
           Baltimore, MD 21202

       Defendant

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No._____

0006161-07

RECEIVED
Civil Clerk's Office
SEP 0 7 2007
Superior Court of the
District of Columbia
Washington, D.C.

**COMPLAINT**

1.    Plaintiff Anthony Price is a resident of the District of Columbia.

2.    Defendant Wells Fargo Financial Maryland, Inc. ("Wells Fargo") is a corporation which

regularly does business in the District of Columbia and this matter arises out of conduct

which occurred in the District of Columbia.  It merged with or is the successor in interest

to Wells Fargo Financial Acceptance Maryland 1, Inc.

**Statement of Facts**

3.    On January 5, 2002, Anthony Price purchased a 2000 Isuzu Trooper from CarMax in

Glen Allen, Virginia, primarily for personal, household or family use.  Plaintiff financed a

portion of the purchase price through a Retail Installment Contract which CarMax

assigned and sold to Wells Fargo.

4.     Pursuant to that Retail Installment Contract, which called for 72 monthly payments of $490.30, Mr. Price made monthly payments to Wells Fargo. He often paid Wells Fargo more than the monthly amount due, in order to pay off the contract early and reduce the interest charges he would have to pay under that contract.

5.     After Mr. Price made timely payments to Wells Fargo for more than 2 years, he was contacted by Wells Fargo and offered an opportunity to refinance the remaining balance due under his Retail Installment Contract at a lower interest rate. Mr. Price accepted Wells Fargo's offer and on September 18, 2004, signed a Note and Security Agreement in its Greenbelt, Maryland office. A copy is attached as Exhibit A. Pursuant to that agreement, Wells Fargo marked Mr. Price's initial Retail Installment Contract as paid in full and returned it to him. Mr. Price then made monthly payments to Wells Fargo pursuant to the September 18, 2004 Note and Security Agreement. As before, Mr. Price often made monthly payments to Wells Fargo in excess of the amount called for by the agreement, in order to pay off the contract early and reduce the interest charges he would have to pay under that contract. He refinanced the vehicle primarily for personal, family and household use.

6.     In August, 2005, Mr. Price became concerned that his account balance was higher than he believed it should be, considering the additional principal payments he had been making voluntarily. He called Wells Fargo, asked it to research the question and advise him of the results of its investigation.

7.     Wells Fargo sent Mr. Price a summary of payments received on his account. Mr. Price then called and spoke with a Wells Fargo representative, asking for assistance in

2

understanding how his payments were applied to principal and to interest, and why the

principal balance remained as high as it was then stated to be. The representative could

only refer Mr. Price to his contract and commented on the relatively high interest rate on

that contract. Although Mr. Price was unable to obtain an answer to his questions, he

continued making timely monthly payments to Wells Fargo under the September 18,

2004 Note and Security Agreement.

8.    On or about June 5, 2006, Wells Fargo mailed Mr. Price the original Certificate of Title

to the vehicle, with its representative having signed a notation stating that Wells Fargo's

"interest in this vehicle is hereby released." A copy is attached as Exhibit B.

9.    Subsequently, Wells Fargo representatives called from time to time to inform Mr. Price

that his monthly payment had not been received. On these occasions, Mr. Price would

request that Wells Fargo update its records to reflect that its lien had been released and

that no further payments were due. On several occasions, Mr. Price faxed Wells Fargo a

copy of the title with lien release. Several Wells Fargo representatives stated they would

update Wells Fargo's records. However, Wells Fargo personnel continued to call.

10.    On one such call in mid-August, 2006, Mr. Price explained he had already spoken with

several Wells Fargo representatives, and asked that Wells Fargo stop calling him. Mr.

Price provided the name, address and phone number of his attorney at Weinstock

Friedman & Friedman in Baltimore to the Wells Fargo representative and asked that any

future communications from Wells Fargo be directed to his attorney.

11.    Mr. Price also visited the D.C. Department of Motor Vehicles ("DMV"), which

subsequently mailed him a clear title to his vehicle and confirmed that he owned the

3

vehicle outright.

12.  In September 2006, Mr. Price received a bill in the mail from Wells Fargo reflecting a

past due balance. He again faxed Wells Fargo a copy of the title with lien release and

asked Wells Fargo to update its records.

13.  In late September, 2006, Mr. Price received a Notice of Default, Strict Compliance, and

Possible Intent to Repossess. A copy is attached as Exhibit C. Mr. Price provided a copy

to his attorney, who wrote to Wells Fargo on October 9, 2006 denying that any additional

payments were due and stating "If you believe Mr. Price owes you any additional monies

please forward a complete accounting to him at the same time." A copy of this letter is

attached as Exhibit D.

14.  Wells Fargo did not provide any further accounting to Mr. Price, nor did it communicate

in any way with his attorney. Wells Fargo also failed to explain to Mr. Price, despite

multiple requests, why he was obligated to make additional payments after Wells Fargo

had released its lien on his vehicle and after Mr. Price had obtained clear title.

15.  In mid-October, 2006, Mr. Price confirmed with the D.C. DMV that he still had clear title

to the vehicle.

16.  On or about November 21, 2006, without further communications to Mr. Price or his

attorney (other than a deceptive postcard described in ¶¶ 38-40 of this Complaint), Wells

Fargo caused its agents to repossess Mr. Price's vehicle from its parking space adjacent to

his residence in the District of Columbia.

17.  Wells Fargo did not provide Mr. Price with written notice of the repossession, where the

car was stored, how to retrieve the personal property in his car, how to reinstate the

4

contract or how to redeem his vehicle.

18. Wells Fargo subsequently sold Mr. Price's vehicle and in an Explanation of Accounting dated March 28, 2007, advised Mr. Price it had sold his vehicle and that his account had a "deficiency" of $6,127.85. A copy is attached as Exhibit E.

19. Subsequently, Mr. Price attempted to resolve his concerns with Wells Fargo through counsel, but those efforts were unsuccessful. Through these efforts, however, Mr. Price obtained for the first time a November 22, 2006 "Notice of Our Plan to Sell Property Notice of Right to Reinstate or Redeem Notice of Right to Public Sale," a notice which Wells Fargo claims it sent to Mr. Price shortly after the repossession. A copy is attached as Exhibit F. Mr. Price did not receive any such Notice until after his car had been sold.

20. Wells Fargo's November 22, 2006 Notice attached as Exhibit F notes that Mr. Price has certain rights relating to repossession pursuant to D.C. law; unfortunately, Wells Fargo failed to comply with D.C. law or honor Mr. Price's rights pursuant to D.C. law.

21. As a result of the acts and omissions of Wells Fargo as set forth in this Complaint, Mr. Price lost the use of his car, has incurred and continues to incur expenses for alternative transportation, has been unable to attend to daily needs or travel as he wished; was unable to retrieve and lost valuable items of personal property in his vehicle; was unable to reinstate his contract or redeem his vehicle; he has been and continues to be embarrassed, deceived, misled, angered and frustrated, suffered significant emotional distress; his credit has been damaged; and he has sustained and continues to sustain other losses and damages.

22. Investigation of the facts undertaken after the repossession has shown that after Wells

5

Fargo released its lien on June 5, 2006, and although Wells Fargo knew that Mr. Price

disputed its right to additional payments, Wells Fargo engaged in *ex-parte*

communications with the D.C. DMV pursuant to which Wells Fargo twice secretly

induced the DMV to place a lien on the title to Mr. Price's vehicle, in October 2006 and

again in December 2006. Wells Fargo never informed Mr. Price that after releasing its

lien on June 5, 2006, another lien was obtained. Wells Fargo obtained these subsequent

liens from the DMV without disclosing to the DMV that it had previously released its lien

on the title to Mr. Price's vehicle and mailed the original title with lien release to Mr.

Price, and that Mr. Price disputed its right to the additional lien. Wells Fargo

communicated with the DMV without notice to Mr. Price in order to deny him an

opportunity to be heard and to protect his property. Prior to the repossession and sale of

his vehicle, Wells Fargo never notified Mr. Price that it had asserted a new lien on his

vehicle which had been accepted by the DC DMV. Wells Fargo also disregarded Mr.

Price's multiple attempts and his attorney's attempt to obtain an explanation of the

asserted account balance or the basis for Wells Fargo's belief that additional payments

were due. Instead of providing a coherent explanation or any explanation whatsoever,

Wells Fargo simply repossessed and sold his vehicle.

### COUNT ONE
(Maryland Credit Grantor Closed End Credit Provisions)

23.   Plaintiff incorporates by reference as though fully set forth the allegations in paragraphs 1

through 22 of this Complaint.

24.   Plaintiff's September 18, 2004 Note and Security Agreement with Wells Fargo attached

6

as Exhibit A provides that the agreement is governed by Maryland law. *See* reverse side

of the agreement, toward the bottom, where the following provision appears:

> STATE LAW. This loan and Note and Security Agreement are
> governed by the laws of Maryland. This loan is made under Title
> 12, Subtitle 10 of the Commercial Law Article of the Annotated
> Code of Maryland.

25.    Title 12, Subtitle 10 of Maryland's Commercial Law article references Maryland's Credit

Grantor Closed End Credit Provisions ("CLEC"). This statute imposes requirements on

credit grantors, such as Wells Fargo, who seek to repossess and sell motor vehicles in

which they have a security interest. Wells Fargo violated these provisions in multiple

ways.

26.    Pursuant to CL §12-1021(e), Wells Fargo was required to provide Mr. Price with written

notice personally or by registered or certified mail that provided certain information,

including his right to redeem his tangible personal property and the exact location where

his vehicle was stored. Wells Fargo violated this requirement by failing to provide Mr.

Price with the required notice.

27.    Pursuant to CL §12-1021(j)(1)(ii), before selling Mr. Price's vehicle, Wells Fargo was

required to provide Mr. Price with a written notice by certified mail of the time and place

of sale. Mr. Price never received, and Wells Fargo never provided, written notice of the

time and place of sale. Even if Wells Fargo had provided written notice, its purported

Notice of November 22, 2006 – which Mr. Price never received – fails to provide notice

of the time and place of sale, for it states only that the vehicle will be sold some time after

12/7/06, does not identify the date of sale and does not identify the place of sale.

28. Pursuant to CL §12-1021(j)(2), Wells Fargo was required to provide Mr. Price after the repossession sale with a "full accounting" in writing concerning the sale and to provide, *inter alia*, a statement of the purchaser's name and address, the number of bids sought and received, and any statement as to the condition of the goods at the time of repossession which would cause their value to be increased or decreased above or below the market value for goods of like kind and quality. CL §12-1021(j)(2)(vii) - (ix). Wells Fargo's Explanation of Accounting attached as Exhibit E fails to provide the required information, information needed to help determine whether the vehicle was sold in a commercially reasonable manner.

29. Pursuant to CL §12-1021(k)(4), Wells Fargo is barred from obtaining a deficiency balance due to its failure to provide the notices described above.

30. Pursuant to CL §12-1018(a)(2), when a credit grantor violates "any provision" of Title 12, Subtitle 10, "the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan."

31. Wells Fargo knowingly violated the provisions of Maryland's Credit Grantor Closed End Credit Provisions set forth above, subjecting Wells Fargo to treble the amount of the civil penalty per CL §12-1018(b).

WHEREFORE, Plaintiff prays for a declaration that Wells Fargo may not obtain a deficiency judgment on his account; Plaintiff requests that Wells Fargo be ordered to remit to him as a civil penalty all amounts it collected for interest, costs, fees and any other charges on this loan other than principal; for Wells Fargo's knowing violations of the statute, Plaintiff requests that Wells Fargo be order to pay three times the amount it collected in excess that

8

allowed by the statute, per CL §12-1018(b); and for such other and further relief as the Court deems appropriate.

**COUNT TWO**
(D.C. Consumer Protection Procedures Act).

32.    Plaintiff incorporates by reference as though fully set forth the allegations in paragraphs 1 through 31 of this Complaint.  Mr. Price brings this count on his own behalf and on behalf of other D.C. residents.

33.    Wells Fargo engaged in multiple unlawful trade practices in violation of the D.C. Consumer Protection Procedures Act ("CPPA"), D.C. Code §28-3901 *et seq.*

**(Violation of D.C. Repossession Regulations)**

34.    Although Wells Fargo's own post-repossession notice attached as Exhibit F recognized that D.C. repossession provisions apply to its repossession of Mr. Price's vehicle from his home in the District of Columbia, Wells Fargo nonetheless willfully violated the same D.C. repossession regulations in several important respects:

a.  Wells Fargo violated 16 D.C.M.R. §341.4 when it failed to provide Mr. Price with written notice within 5 days of repossession of, *inter alia,* his right to redeem the vehicle and the exact address where the vehicle was stored;

b.  On information and belief, Wells Fargo failed to store the vehicle in the District of Columbia for 15 days after the repossession, in violation of 16 D.C.M.R. §341.5.

c.  Wells Fargo assessed a charge for repossession in excess of $100.00, in violation of 16 D.C.M.R. §342.2.

9

d. On information and belief, Plaintiff avers Wells Fargo assessed storage charges in excess of $3.00 per day, in violation of 16 D.C.M.R. §342.2.

e. Wells Fargo misrepresented the amount necessary to reinstate the contract, in violation of 16 D.C.M.R. §341.4.

35. Each of Wells Fargo's violations of the D.C. repossession regulations in Title 16 of the D.C. Municipal Regulation constitutes an unlawful trade practice in violation of the CPPA, per D.C. Code §28-3904(dd) and 16 D.C.M.R. §346.2.

### (Misrepresentations)

36. Wells Fargo's notices attached as Exhibits E and F misrepresent Mr. Price's rights, in violation of the CPPA, D.C. Code §28-3904(a), (b), (d) and (e).

### (Omissions of Material Fact)

37. Wells Fargo's notices attached as Exhibits E and F omit material facts which tend to and did mislead Mr. Price, in violation of the CPPA, D.C. Code §28-3904(f).

### (Unlawful Trade Practices in Effort to Collect Alleged Debt)

38. When Wells Fargo decided to repossess Mr. Price's vehicle, it caused a postcard to be sent to Mr. Price. A copy is attached as Exhibit G. This postcard was intended to induce Mr. Price to call the number listed so that he could obtain information that appeared to relate to a safety recall, warranty repair and/or a part order.

39. Upon receipt of this postcard in mid November, 2006, and due to concern for the safety of his vehicle, Mr. Price promptly called the toll-free 800 "customer service" number in order to obtain what the card represented would be "the latest information from the factory." Mr. Price answered the questions posed by the person who answered the phone.

When Mr. Price stated his address in response to a question, the person on the line stated she really was calling for Wells Fargo and that Wells Fargo would be repossessing his vehicle now that it had confirmed his address.

40. On information and belief, the postcard attached as Exhibit G was not from a customer service representative of "the factory," as represented, rather it was sent at the direction of Wells Fargo to assist it in collecting an alleged debt through deceptive practices. Contrary to the plain meaning of the statements on the postcard, it had nothing to do with a warranty repair or "Part No. R.P. 1354" or information from the factory but was a ruse designed to trick Mr. Price to provide his address in aid of vehicle repossession.

41. Wells Fargo's use of such deceptive practices is inimical to the public good. Cynically tapping into motorist concerns about safety recalls in order to collect debts will tend to decrease public confidence in and response to legitimate safety recalls or warranty campaigns. On behalf of the public, as authorized by the CPPA in D.C. Code §28-3905(k), Mr. Price asks this Court to enter an injunction prohibiting Wells Fargo from using such deceptive practices as part of its efforts to collect debts from D.C. residents.

42. Wells Fargo use of the postcard attached as Exhibit G to collect an alleged debt constitutes an unlawful trade in violation of the CPPA, D.C. Code §§28-3904(a), (b), (d), (e), (f), (k) and (m).

**(Violation of Maryland's Credit Grantor Closed End Credit Provisions)**

43. Wells Fargo's failure to provide the post-repossession notices mandated by Maryland's Credit Grantor Closed End Credit Provisions constitutes unlawful trade practices under the CPPA.

11

**(Declaration that No Additional Funds are Due Wells Fargo)**

44.    Due to Wells Fargo's failure to abide by the requirements of the District of Columbia's

repossession requirements in 16 D.C.M.R. §§340 *et seq.*, a deficiency does not arise, per

16 D.C.M.R. §§340.5 and 346.1.  Plaintiff requests that the Court enter a declaratory

judgment that a deficiency does not arise and that Wells Fargo may not collect a

deficiency; Plaintiff further requests this Court order that Wells Fargo may not report to

credit reporting agencies that funds are due on Mr. Price's account, that it not report the

alleged "repossession" to credit reporting agencies and that all negative reports be

removed from the information provided to credit reporting agencies.

45.    As a result of Wells Fargo's unlawful trade practices in violation of the CPPA, Mr. Price

was misled and sustained the damages and losses set forth above.

WHEREFORE, Mr. Price demands judgment against Wells Fargo:

(i) for compensatory damages in the amount of SEVENTY-FIVE THOUSAND

DOLLARS ($75,000.00);

(ii) demands that all compensatory damages be trebled pursuant to D.C. Code §28-

3905(k) or that he receive minimum statutory damages of $1,500.00 for each of Wells Fargo's

unlawful trade practices, whichever is greater;

(iii) requests an award of punitive damages to punish Wells Fargo and to deter it and

other lenders from engaging in similar conduct;

(iv) requests that this Court enter a declaration and injunction establishing that a

deficiency does not arise, that Wells Fargo may not collect any claimed deficiency from Mr.

12

Price, that Wells Fargo may not report to credit reporting agencies that funds are due on Mr.

Price's account, that Wells Fargo not report the alleged "repossession" to credit reporting

agencies and that all negative information be removed from the information Wells Fargo

provides to credit reporting agencies regarding his account;

(v) requests the Court grant an injunction prohibiting Wells Fargo from sending

misleading postcards and engaging in other deceptive practices as part of its effort to collect

alleged debts from D.C. residents;

(vi) requests that the Court award him interest, costs and reasonable counsel fees;

(vii) requests that the Court award such other and further relief as the Court deems

appropriate.

### COUNT THREE
(Statutory Damages under Uniform Commercial Code Provisions)

46.   Plaintiff incorporates by reference as though fully set forth the allegations in paragraphs 1

through 45 of this Complaint.

47.   When Wells Fargo failed to provide Mr. Price with notice before the sale of his car, Wells

Fargo violated the requirements of the applicable Uniform Commercial Code ("UCC")

provisions, whether D. C. Code §§28-9:2-611, 28:9-613 and 28:9-615 or Md. Code Ann.,

CL §§9-611, 9-613 and 9-614.

48.   The statutory penalty for these violations is established in the UCC at D.C. Code §28:9-

625(c)(2) and Md. Code Ann., CL §9-625(c)(2).

WHEREFORE, Plaintiff demands the minimum statutory damages established by the

UCC, plus such other and further relief as the Court deems appropriate.

**COUNT FOUR**
(Wrongful Repossession)

49.    Plaintiff incorporates by reference as though fully set forth the allegations in paragraphs 1

through 48 of this Complaint.

50.    When Wells Fargo repossessed Mr. Price's vehicle on or about November 21, 2006, it

had no right to possession because it had previously released its lien.

51.    Although Wells Fargo secretly induced the D.C. DMV to place a lien on Mr. Price's

vehicle after it mailed Mr. Price the original title with the June 5, 2006 lien release,

leading Mr. Price to believe no further payments were due, Wells Fargo is estopped from

enforcing any such subsequent lien by its conduct, acts and omissions, by its bad faith, by

its knowledge that Mr. Price believed he had no further payment obligations once he

received its June 5, 2006 lien release on the original title, by failing to notify Mr. Price of

the new lien even though it knew Mr. Price believed he had no obligation to make

additional payments to Wells Fargo because its lien had been released on June 5, 2006, by

its failure to communicate with Mr. Price or his attorney concerning the basis for its claim

that funds remained due notwithstanding its June 5, 2006 lien release, and by its failure to

notify Mr. Price of its own errors and the actions it took at the DC DMV without his

knowledge, among other reasons.

52.    Wells Fargo acted with actual malice and in wanton and reckless disregard of Mr. Price's

interests.

53.    As a result of Wells Fargo's wrongful repossession of his vehicle, Mr. Price sustained the

losses and damages set forth above.

14

WHEREFORE, Plaintiff demands an award of compensatory damages in the amount of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), punitive damages in such amount as the jury deems necessary to punish Wells Fargo and to deter it and other lenders from engaging in similar conduct, plus interest, costs and such other and further relief as the Court deems appropriate.

## COUNT FIVE
(Breach of Contractual Duty to Act In Good Faith)

54.    Plaintiff incorporates by reference as though fully set forth the allegations in paragraphs 1 through 53 of this Complaint.

55.    Wells Fargo owed Mr. Price a duty of good faith in the enforcement of the parties' September 18, 2004 Note and Security Agreement attached as Exhibit A.  Pursuant to this duty, Wells Fargo was prohibited from acting in such a manner as to prevent Mr. Price from performing his obligations under this agreement.

56.    In breach of its obligations to act in good faith in enforcement of the agreement, after it mailed Mr. Price the original title with a release of its lien, Wells Fargo failed to explain to Mr. Price why it believed he owed additional funds under the agreement despite multiple requests for an explanation by Mr. Price.   Even after Mr. Price faxed copies of the lien release to Wells Fargo on multiple occasions and explained to Wells Fargo on multiple occasions that he was not making additional payments because no payments were due and Wells Fargo had released its lien on his vehicle on June 5, 2006, Wells Fargo never provided any further accounting or explanation for any belief that he owed additional funds.

15

57.    In breach of its obligations to act in good faith, Wells Fargo ignored a written request from Mr. Price's attorney to provide an accounting if Wells Fargo believed additional funds were due.

58.    In breach of its obligations to act in good faith, Wells Fargo failed to inform Mr. Price that it had secretly obtained a subsequent lien on Mr. Price's vehicle, even though Wells Fargo knew Mr. Price believed Wells Fargo had released its lien and no additional funds were due.

59.    In breach of its obligations to act in good faith, Wells Fargo obtained the second lien from the D.C. DMV secretly, without notice to Mr. Price, whom it knew would have opposed such a lien. Moreover, on information and belief, Mr. Price avers that it obtained its second lien by failing to inform the D.C. DMV that it had previously released its lien and sent its title to Mr. Price.

60.    In breach of its obligations to act in good faith, Wells Fargo repossessed Mr. Price's vehicle and then failed to provide Mr. Price with written or oral notice of where the vehicle was located or what he needed to do to get the vehicle back.

61.    As a result of Wells Fargo's breach of contract and its duty of good faith, Mr. Price sustained the losses and damages set forth above.

WHEREFORE, Plaintiff demands compensatory damages of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), plus interest and costs, and such other and further relief as the Court deems appropriate.

O'TOOLE, ROTHWELL, NASSAU & STEINBACH

By: _____

Mark H. Steinbach (212589)
1350 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20006
(202) 775-1550
Attorneys for Plaintiff Anthony Price

**JURY DEMAND**

Plaintiff demands trial by jury.

_____
Mark H. Steinbach

17

Exhibit A

DEC. 27. 2006 11:02AM   WELL FARGO   NO. 077    P. 19

## NOTE AND SECURITY AGREEMENT (including Loan Statement)

**IDENTIFICATION OF PARTIES:** Except where indicate otherwise, we use the words you and your to mean the Borrowers and anyone else who signs this Note and Security Agreement. The words we, us, and our refer to the Creditor.

YOUR ACCOUNT IS PAYABLE TO THE CREDITOR SHOWN BELOW

WELLS FARGO FINANCIAL ACCEPTANCE
MARYLAND 1, INC.
7701 GREENBELT RD STE 107
GREENBELT, MD    20770

| Account Number: | Type |
|---|---|
| 2001439 | R |

Borrowers (Names and Address)

PRICE, ,ANTHONY,
4876 JUST STREET
WASHINGTON, DC, 20019

Additional Borrowers/Signers

| Date of | First Payment Due Date | Amount of Each Month | Final Payment Due Date | First Payments $ | Other Payments $ | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 09/18/04 | 10/18/04 | | 03/18/08 | 478.00 | 478.00 | 42 |

14.24 % ANNUAL PERCENTAGE RATE: the cost of your credit as a yearly rate.

$  4337.70   FINANCE CHARGE: the dollar amount the credit will cost you.

$ 15738.30   Amount Financed: the amount of credit provided to you or on your behalf.

$ 20076.00   Total of Payments: the amount you will have paid after you have made all payments as scheduled.

Late Charge: If any part of a payment is more than 7 days late, you will be charged a late charge equal to 6% of the full payment.

Prepayment: If you pay off early, you may be entitled to a refund of part of the finance charge.

Security: You are giving us a security interest in the property indicated below:

[X] Motor Vehicle(s)  [ ] Household Goods  [ ] Household Goods & Sports/Recreation Equipment
[ ] Real Estate  [ ] This Loan is Unsecured  [ ] The Goods or Property Being Purchased
[ ] Other Property:

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

### ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| $ NONE | PREPAID FINANCE CHARGE |
| $ 15738.30 | AMOUNT FINANCED (Sum of amounts shown below) |
| $ NONE | AMOUNT PAID ON YOUR ACCOUNT |
| $ NONE | AMOUNT PAID TO YOU FOR AUTO SECURITY PLAN |
| $ 698.30 | AMOUNT GIVEN TO YOU DIRECTLY |
| | AMOUNTS PAID TO OTHERS ON YOUR BEHALF |
| $ NONE | To Ins. Co. for Life Insurance (Single) |
| $ NONE | To Ins. Co. for Life Insurance (Joint) |
| $ NONE | To Ins. Co. for Accident & Health Insurance (Single) |
| $ NONE | To Ins. Co. for Accident & Health Insurance (Joint) |
| $ NONE | To Ins. Co. for Invol. Unemployment Insurance |
| $ 48.00 | To Public Officials for Security Interest Fees |
| $ NONE | To Appraiser for Appraisal |
| $ NONE | To Ins. Co. for Title Insurance |
| $ NONE | For Title Exam To |
| $ NONE | To Public Officials for Documentary Stamp Tax |
| $ NONE | To Public Officials for County Transfer Tax |
| $ 14,993.00 | To WFFA |
| $ | To |
| $ | To |

[ ] When this box is checked, itemization is continued on attached addendum.
We may be retaining a portion of this amount.

$ 15738.30   Principal Amount of Loan

14.24 % Agreed Rate of Interest Per Year

$ 4337.70   Interest

$ NONE   Loan Fee (Prepaid Finance Charge)

Closed By [signature]

**YOUR PROMISE TO PAY AND THE TERMS OF REPAYMENT.** To repay your loan, you promise to pay us the amount shown above as Total of Payments which includes Interest at the Agreed Rate of Interest Per Year and also includes any Loan Fee (Prepaid Finance Charge) shown above as well as any other charges which are shown above in the Itemization of Amount Financed box. Such Loan Fee and other charges are authorized by Section 12-1005 of the Commercial Law Article of the Annotated Code of Maryland. Interest is computed on the Principal Amount of Loan. The Principal Amount of Loan includes the Amount Financed and any Loan Fee. Any Loan Fee is withheld from the proceeds of your loan. The Finance Charge includes Interest plus any Loan Fee. You'll pay the Total of Payments to us at our office in installments each month according to the terms of repayment shown above.

**YOU GRANT US A SECURITY INTEREST.** You give us a security interest in your property described below. This property is called collateral. You also give us a security interest in any accessions to and proceeds of the collateral. Accessions are goods installed in or attached to the collateral. Proceeds are money or property due to you from the loss, destruction or sale of the collateral. You also give us a security interest in any amount due to you under any credit insurance purchased with this loan and listed in the Itemization of Amount Financed, including any refund of unearned premium for the insurance. The purpose of this security interest is to protect us if you don't repay your loan described above or if you break your promise made in this Note and Security Agreement.

**THE PARAGRAPHS CHECKED BELOW DESCRIBE THE COLLATERAL COVERED BY THIS NOTE AND SECURITY AGREEMENT.**

[ ] (a) All of the household goods and sports/recreation equipment of every kind now located at the Borrowers' residence address shown above, except those items prohibited by the Federal Trade Commission's Credit Practices Rule (referred to in the paragraph on the reverse side titled "Credit Practices Rule"). If you have more than one radio or television, you are excluding the least valuable radio and least valuable television and giving us a security interest in the remaining radio(s) and television(s).

[ ] (b) The following property located at the Borrowers' residence address indicated above:

[X] (c) Motor vehicle(s) described as follows:

| Year | Make | Model | Serial Number |
|---|---|---|---|
| 2000 | ISUZU | TROOPER | JACDJ58X4Y7J12380 |

**REVERSE SIDE.** The additional terms printed on the reverse side are a part of this Note and Security Agreement, and you are bound by them in the same manner as if they were printed on the front page of this Note and Security Agreement.

**SIGNATURES.** If you agree to be bound by the terms of this Note and Security Agreement, please sign your name below. All persons signing this Note and Security Agreement will be fully responsible for paying it in full. All signatures are "under seal," which extends the time that we have to bring an action to collect this loan if you default. By signing below, you are authorizing disbursement of the loan proceeds as shown above in the "Itemization of Amount Financed" box.

**YOU ACKNOWLEDGE THE EXISTENCE OF A SEPARATE ARBITRATION AGREEMENT SIGNED CONCURRENTLY WITH THIS NOTE AND SECURITY AGREEMENT, AND YOU SPECIFICALLY AGREE TO BE BOUND BY ITS TERMS.**

____(Seal) [signature]   SIGN HERE   (Seal) _____   SIGN HERE

____(Seal) _____   SIGN HERE   (Seal) _____   SIGN HERE

### COLLATERAL OWNER'S GRANT OF A SECURITY INTEREST

In this Collateral Owner's Grant of a Security Interest, the word you means anyone who signs below. The words we and us refer to the Creditor. To secure all of the Borrowers' agreements under this Note and Security Agreement, you give us a security interest in the property you own described in the description of collateral above ("collateral") and you agree that we have rights in the collateral as provided by this Note and Security Agreement. However, you assume no personal responsibility for the payment of any amounts owed under this Note and Security Agreement.

_____   SIGN HERE   _____   SIGN HERE

MD-2002-0304 (AUT)

RECEIVED  2006/12/27  10:06:51

DEC. 27. 2006 11:03AM    WELLS    0    ...DITIONAL TERMS    NO. 0775    20

**RIGHT TO PREPAY LOAN – REFUND OF INT    ST.** You can prepay your loan any time. If your loan is p    l in full, we'll refund any unearned interest using the actuarial me    in accordance with Section 12-1009 of the Commercial    Article of the Annotated Code of Maryland. No refund will be made if the unearned interest is less than $6.00. The Loan Fee, if any, is fully earned on the date of your loan and is not subject to refund.

**LATE CHARGE.** If you're more than 7 days late in paying any part of an instalment, you promise to pay a late charge equal to 5% of the full instalment.

**DEFAULT – ENTIRE BALANCE DUE.** If you don't pay an instalment on time or if you violate the terms of this Note and ~urity Agreement or of any other security instrument that secures the payment of this Note and Security Agreement, you'll be in ult. When that happens, you agree that without giving you advance notice, we can require you to pay the remaining balance of Note and Security Agreement at once (less any required refund of interest). We can also use any remedies available to us under the Uniform Commercial Code.

**LOAN FEE.** If a Loan Fee amount is shown on the reverse side, you certify that this Note and Security Agreement is secured by a lien on residential real property.

**COLLECTION COSTS.** If you default on your loan, you agree to pay all court and other collection costs which are incurred by us and relate to your default, including reasonable attorney's fees not to exceed 16% of the amount due where the attorney is not one of our salaried employees.

**RETURN CHECK CHARGE.** If a payment on this loan is made with a check that is dishonored on the second presentment for any reason (except an error by us), you agree to pay us a $15 charge.

**OWNERSHIP OF COLLATERAL.** You agree that you own the collateral. You also agree that no one else has any interest in or claim against the collateral which has not been disclosed to us in writing. You promise not to sell, lease or give the collateral to anyone else. You will keep the collateral free from claims of others (for example, taxes, liens, and security interests). If you fail to keep the collateral free from claims of others as required under this section, we may pay the claims (but we are not required to), You will pay us the cost of any claims we pay when we ask for payment.

**INSURANCE ON COLLATERAL.**

**YOU MUST KEEP THE COLLATERAL INSURED.** You will keep the collateral insured against physical damage and loss until you pay this loan in full. Collision and comprehensive or all risk insurance would satisfy this requirement. You may buy the insurance from anyone you want, but the insurance company, the amount of insurance and the deductible must be acceptable to us. You will have the insurance company name us in the policy as a secured party, have the policy provide for payment to us in case of loss and will require the insurance company to notify us in writing at least 10 days before cancelling coverage. You will give us a copy of the policy or give us other proof of the required insurance acceptable to us.

**COLLATERAL PROTECTION INSURANCE.** If you fail to keep the collateral insured as required or fail to give us proof of the required insurance acceptable to us, we may, but we are not required to, buy insurance (Collateral Protection Insurance) to protect our interest in our collateral. The Collateral Protection Insurance may, but need not also protect your interest. If you have not given us proof that the required insurance was in force as of the date of this loan, the effective date of the Collateral Protection Insurance can be as early as the date of this loan, even if the certificate of insurance for the Collateral Protection Insurance is not issued until later. If you have given us proof that the required insurance was effective as of the date of this loan, the effective date of the Collateral Protection Insurance can be as early as the date the required insurance expired or was cancelled, even if the certificate of insurance for the Collateral Protection Insurance is not issued until later.

**PAYMENT FOR COLLATERAL PROTECTION INSURANCE.** You are responsible for the cost of any Collateral Protection Insurance purchased by us. If we buy Collateral Protection Insurance, we may add the premium for the Collateral Protection Insurance to the unpaid balance of your loan and increase your monthly payment to pay the premium during the remaining term of the Collateral Protection Insurance; or we may require you to pay the full premium for the Collateral Protection Insurance immediately.

**CANCELLATION OF COLLATERAL PROTECTION INSURANCE.** If we buy Collateral Protection Insurance, you may still obtain the required insurance from the insurance company or agent of your choice. If you do this and give us proof of the required insurance acceptable to us, we will cancel the Collateral Protection Insurance as of the effective date of the insurance you obtain. If your account is paid off while the Collateral Protection Insurance is in effect, we will cancel the Collateral Protection insurance as of the date your account is paid off. If we cancel the Collateral Protection Insurance, we will credit any refund of unearned insurance premium to your account. You will remain obligated to pay any earned insurance premium.

**IT IS BETTER FOR YOU TO GET YOUR OWN INSURANCE.** If we buy Collateral Protection Insurance, it will probably be more expensive and provide less insurance protection than insurance you could obtain from the insurance company or agent of your choice. The amount the Collateral Protection Insurance will pay may be less than the unpaid balance of your loan and may ' less than the full value of the collateral. We urge you to contact an insurance agent to assist you in evaluating your own    surance needs and to advise you whether other, less expensive, insurance is available.

**...EPLACEMENT OF COLLATERAL.** If any collateral is damaged or lost, you will notify us immediately of the loss or damage. You agree to repair or replace the property promptly. You will instruct any insurance company and anyone else responsible for the damage or loss to pay any money due as a result of the damage or loss (including but not limited to, insurance proceeds) to us directly instead of to you and us jointly. We may, at our option, either release these payments to you to repair or replace the collateral or apply these payments to your debt under this loan. You agree that we won't release any amount to you if you are in default under this loan. If any amount is released to you, you agree that you must repair or replace the collateral to our satisfaction and must sign any documents or do whatever else is necessary to give us a security interest in the repaired or replaced collateral.

**WAIVER AND DELAY IN ENFORCEMENT.** You agree to the following: We may give up ("waive") or delay enforcement of our rights under this loan without losing them. If we release any of you from this loan, the rest of you will not be released. We do not have to give you notice of any waiver, delay or release. We do not have to use our legal remedies against any one of you before we use our legal remedies against any of the rest of you. We do not have to take possession of any property which secures this loan before we use our other legal remedies against you. You will not be released from your obligations under this loan if we exchange or release any property which secures this loan. You agree to any renewals of this loan and any extensions that we give any of you.

**CREDIT PRACTICES RULE.** The Federal Trade Commission has issued a Credit Practices Rule that may limit your right to give us a security interest in certain property. If paragraph (a) in the description of collateral on the reverse side is checked, then the Credit Practices Rule applies to this security agreement. If the Rule applies, it provides that we cannot take a security interest in the clothing, furniture, appliances, one radio and one television, linens, china, crockery, kitchenware, and personal effects (including wedding rings) of the Borrower and his or her dependents; however, this Rule does not prohibit us from taking a security interest in any other household goods including but not limited to works of art, electronic entertainment equipment (other than one television and one radio), items acquired as antiques, and jewelry (other than wedding rings). Also, this Rule does not prohibit us from taking a purchase-money security interest of the nature permitted by the Rule in any household goods.

**ADDITIONAL SIGNERS.** If you sign this Note and Security Agreement and are not a Borrower, you agree to remain responsible for this loan even if we fail to notify you that the Note and Security Agreement hasn't been paid. You also agree to remain responsible if we change the terms of payment or release any security without notifying you. A person who signs only in the Collateral Owner's Grant of a Security Interest box has no personal responsibility for the payment of any amounts owed under this Note and Security Agreement.

**LOAN STATEMENT RECEIVED.** If you are a Borrower, you acknowledge receiving a completely filled-in Note and Security Agreement (including Loan Statement).

**STATE LAW.** This loan and Note and Security Agreement are governed by the laws of Maryland. This loan is made under Title 12, Subtitle 10 of the Commercial Law Article of the Annotated Code of Maryland.

**INFORMATION REPORTED TO CREDIT BUREAUS.** If you believe we have reported incorrect information about your account to a credit bureau, you may notify us by writing to us at Department A, 206 8th Street, Des Moines, IA 50309. Please include your account number and a description of the information that is incorrect.

---

☐ If this box is checked, the following Notice applies:

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

MD-XXX2-C004 (AUT)

Exhibit B

401035

# CERTIFICATE OF TITLE

## ★★★ DISTRICT of COLUMBIA ★★★

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | BODY TYPE | GVWR | EMPTY WT. |
|---|---|---|---|---|---|
| JACDJ58X4Y7J12380 | 2000 | ISUZ | SV | O | 43 |

| TITLE NUMBER | TITLE DATE | ODOMETER | CLASS | OPER. |
|---|---|---|---|---|
| K616172 | 02/04/2002 | 20892 | A | YDE |
| | | ACTUAL MILEAGE | | |

NAME AND ADDRESS OF VEHICLE OWNER(S)

PRICE, ANTHONY
4978 JUST ST NE
WASHINGTON DC 20019

*DEPARTMENT OF MOTOR VEHICLES*
**OFFICIAL SEAL**
*DISTRICT OF COLUMBIA*

*Sherryl Hobbs Newman*

THE TRANSPORTATION SYSTEMS ADMINISTRATOR FOR THE DEPARTMENT OF PUBLIC WORKS DOES FURTHER CERTIFY THAT HE HAS USED REASONABLE DILIGENCE IN ASCERTAINING WHETHER OR NOT THE FACTS IN SAID APPLICATION FOR A CERTIFICATE OF TITLE ARE TRUE AND THAT HE IS SATISFIED THAT THE APPLICANT IS THE LAWFUL OWNER OF THE ABOVE-DESCRIBED MOTOR VEHICLE OR TRAILER OR IS OTHERWISE ENTITLED TO HAVE THE SAME TITLED IN HIS NAME. AND DOES HEREBY CERTIFY THAT THE ABOVE-NAMED APPLICANT HAS BEEN DULY RECORDED IN HIS OFFICE AS THE LAWFUL OWNER OF THE ABOVE-DESCRIBED MOTOR VEHICLE OR TRAILER OR IS OTHERWISE ENTITLED TO HAVE THE SAME TITLED IN HIS NAME AS WITNESS HIS HAND AND THE SEAL OF HIS OFFICE THE DAY AND YEAR SET FORTH ABOVE.

| | DATE | | | INTEREST IN THIS VEHICLE IS HEREBY RELEASED: |
|---|---|---|---|---|
| FIRST LIENHOLDER | 01/05/2002    $35,301.60 WELLS FARGO FINANCIAL ACCEPT P O BOX 2075 CORAOPOLIS PA | | FIRST RELEASE | NAME TITLE      DATE 6/5/0 |
| SECOND LIENHOLDER | DATE | | SECOND RELEASE | INTEREST IN THIS VEHICLE IS HEREBY RELEASED: NAME TITLE      DATE |

AUDIT CONTROL NO.

B1249621

DPW 52-10 (REV. 98)

**VOID IF ALTERED**

*Original from Wells Fargo*

Exhibit C

Wells Fargo Financial, Inc.
3210 Lake Emma Road, Suite 2000
Lake Mary, FL 32746
866-242-6817 Phone
866-557-8556 Fax



## NOTICE OF DEFAULT, STRICT COMPLIANCE,
## AND POSSIBLE INTENT TO REPOSSESS

September 26, 2006

Anthony Price
4978 Just Street
Washington, DC 20019-4871

Re:    Account # 02091439

Dear Anthony Price:

Our records show that you are in default on your account for the following reason(s):
(box checked applies).

☒    Your account is now past due in the amount of $2,007.20, including delinquency charges.

☐    You have not provided proof of insurance coverage on the collateral.

---

Please be advised that it is our intention to enforce strict compliance with the terms of your contract now, and for all future payments.  Accordingly, you must cure the default(s) indicated above before 5:00 p.m. on 10/06/2006.  If you do not do so, your account balance will be declared immediately due and we will take steps to repossess the collateral.

The laws of some states require us to inform you that this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

If you have filed bankruptcy, this notice is not an attempt to collect a debt, but is only for your information; you are not liable personally for payment of that debt.  However, we may enforce our lien against any property that you gave as collateral for that debt.  This notice is provided for your information under state repossession laws.

172 (CT/FL/GA/MN/NV/OR/RI/TN/TX/DC) 9/26/2006

Exhibit D



LAW OFFICE

# WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.

EXECUTIVE CENTRE
4 RESERVOIR CIRCLE
BALTIMORE, MD 21208-7301

410-559-9000
FAX: 410-559-9009
NORTHERN VA, DC & MD SUBURBS
800-999-8286

WWW.WEINSTOCKLEGAL.COM

**PARTNERS**
SIDNEY S. FRIEDMAN (MD, DC)
EDWARD J. FRIEDMAN (MD, DC, VA)
J    L. LIPPMAN (MD, DC)

**OF COUNSEL**
MELVYN J. WEINSTOCK

**MANAGING ATTORNEYS**
ILONA M. FISHER
WILLIAM H. THRUSH, JR. (MD, DC)

**ATTORNEYS**
GREG I. ROSE (MD, DC, PA, VA)
MICHAEL W. MOORE
CRAIG A. SCHOENFELD
CHRISTINE GAGE
SHANNON B. KREHITOOL (MD, DC)
H. JEFFREY ZIEGLER (MD, DC)
DENISE L. KINNARD
JOHN R. ROSSBACH
J C AMOS (MD, WV)
JASON E. SOLOMON (MD, DC)
OWEN BLUM (MD, DC)
WALTER D. TY
LINDSAY C. COOPER (MD, DC)
REBECCA A. CARTER
JAMIE B. GLICK (MD, DC)
THOMAS J. MADDEN, JR.
KIMBERLY A. SAXON
VICTOR A. LEMBO
MELISSA L. FRENTZ
LISA D. ETTLINGER
NICOLE C. SHAW
LISA L. GEIER
LISA M. GOLDBLATT (MD, DC, NY)
HOPE A. ERTHE (MD, NY, NIGERIA)
DARLENE T. DAVIES
L     D
J     . SELZER (MD, DC)

October 9, 2006

Wells Fargo Financial, Inc.
3210 Lake Emma Road
Suite 2000
Lake Mary, FL 32746
*via facsimile  866 557 8556*

RE: Anthony Price
Account Number: 02091439
Response to Letter of September 26, 2006

Gentlemen:

I have been consulted by Mr. Anthony Price about the above referenced account.  Mr. Price has received your notice of intent to repossess his 2002 Isuzu.  Mr. Prince has also received the title from the District of Columbia showing no lien on the vehicle.  Apparently there is an error in your records.

Under the circumstances, on behalf of Mr. Price, I demand that you abort any attempt to repossess the car and send Mr. Price a confirmation that you have done so at the address below.  If you believe Mr. Price owes you any additional moneys please forward a complete accounting to him at the same time.

In the meantime, I will advise Mr. Price to take steps to protect his vehicle and to immediately report it as stolen should it "disappear."  I will also advise him to bring an action against  you and your agents and  to assist in criminal prosecution to the fullest extent of the law for grand theft if his car is taken.

I trust this will not be necessary and you will retract your letter of September 26 immediately.

Thank you for your prompt attention to this matter.

Very truly yours,
WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A.

JC Amos

JCA/me
enclosures
cc:    Mr. Anthony Price
        4978 Just Street
        Washington DC   20019-4871

DISTRICT OF COLUMBIA OFFICE  1413 K STREET, N.W., SUITE 1500, WASHINGTON, DC 20005
VIRGINIA OFFICE 10500 SAGER AVENUE, SUITE F, FAIRFAX, VA 22030  ·  OTHER LOCATIONS: YORK, PA; SILVER SPRING, FREDERICK & EASTON, MD

Exhibit E



Date:            3/28/07
Re: Account #       1439                    cc:

Customer Name    Anthony Price              Cobuyer Name
Address          4978 Just Street NE        Cobuyer Address
City, ST Zip      Washington, DC. 20019-487  City, ST Zip

## EXPLANATION OF ACCOUNTING

1) Total amount of debt secured by the collateral including, if any, a refund          $      9,207.35
   of unearned interest or credit service charge on      11/21/06
   and estimated refund of credit insurance, service contracts, etc., if any.
2) Sale proceeds from the sale of the collateral (Gross proceeds of sale)              $      3,800.00
3) Total debt after subtracting proceeds of the sale                                   $      5,407.35
4) Expenses, if allowed:
   A)  Expense of retaking                       $        458.00
   B)  Expense of holding                        $          -
   C)  Expense of preparing for sale             $        167.50
   D)  Expense of sale                           $         95.00
   E)  _____                          $          -
   F)  _____                          $          -
   Total Expenses                                                                      $       720.50

5)  Total Amount of  Deficiency                                                        $      6,127.85

Future debits, credits, charges, including additional credit service charges or interest, rebates, and
expenses may affect the amount shown above as the deficiency or surplus.

Additional information regarding your account may be obtained by contacting:
**Wells Fargo Financial Acceptance**
**Asset Recovery Group**
**PO Box 28724**
**Kansas City, MO  64116**

**(800) 284-0692**

"IF YOU HAVE RECEIVED A DISCHARGE OF THIS DEBT IN BANKRUPTCY OR ARE CURRENTLY IN A
BANKRUPTCY CASE, THE PRECEDING NOTICE IS NOT INTENDED AS AN ATTEMPT TO COLLECT A
DEBT.  THIS COMPANY HAS A SECURITY INTEREST IN THE ABOVE DESCRIBED PROPERTY THAT
CONTINUES EVEN AFTER THE BANKRUPTCY DISCHARGE.  THIS NOTICE IS GIVEN ONLY FOR THE
PURPOSE OF COMPLYING WITH THE REQUIREMENTS OF STATE LAW REGARDING
REPOSSESSION OF COLLATERAL, AND SHOULD NOT BE CONSTRUED AS A DEMAND FOR
PAYMENT."

NA-4026-0202 (AUT) (All except MO)                              Customer Copy

Exhibit F

MAR-08-2007 THU 11:37 AM                    FAX NO.                    P. 11

Wells Fargo Financial, Inc.
3210 Lake Emma Road, Suite 2000
Lake Mary, FL 32746
866-242-6817 Phone
866-557-8556 Fax



### NOTICE OF OUR PLAN TO SELL PROPERTY
### NOTICE OF RIGHT TO REINSTATE OR REDEEM
### NOTICE OF RIGHT TO PUBLIC SALE

November 22, 2006

Anthony Price
4978 Just Street NE
Washington, DC 20019

Subject: Account    .91439

We have your 2000 Isuzu Trooper VIN JACDJ58X4Y7J12380 ("Collateral") because you broke
promises in our agreement. We will sell the Collateral:
☐     at public sale. A sale could include a lease or license. The sale will be held as follows:
        Date:
        Time:
        Place:
        You may attend the sale and bring bidders if you want.

☒     at private sale sometime after 12/7/06. A sale could include a lease or license.

The money that we get from the sale (after paying our costs) will reduce the amount you owe. If we
get less money than you owe, you <will still ☒/ will not ☐> owe us the difference. If we get more
money than you owe, you will get the extra money, unless we must pay it to someone else.

You can get the Collateral back at any time before we sell it by paying us the full amount you owe
which is then due or past due (excluding any amount that would not be due except for an acceleration),
including our expenses. To learn the exact amount you must pay, call us at 866-242-6817.

If you want us to explain to you in writing how we have figured the amount that you owe us, you may
call us at 866-242-6817 or write us at Wells Fargo Financial, Inc. Lake Mary, FL 32746 and request a
written explanation.

If you need more information about the sale, call us at 866-242-6817 or write us at Wells Fargo
Financial, Inc. Lake Mary, FL 32746.

We are sending this notice to the following people who have an interest in the Collateral, or who owe
money under the agreement: N/A

YOU MAY ALSO HAVE THE RIGHT TO GET YOUR PROPERTY BACK BY PAYING LESS THAN
THE FULL AMOUNT YOU OWE. PLEASE READ THE FOLLOWING INFORMATION
CONCERNING YOUR ADDITIONAL RIGHTS UNDER DISTRICT OF COLUMBIA LAW.

DC-4022-01/04

RECEIVED  2007/03/08 10:34:43

MAR-08-2007 THU 11:37 AM                    FAX NO.                         P. 12

**Reinstatement of Contract/ Redemption of Vehicle:** If your default is the result of a failure to make payments, you may get back the vehicle and reinstate your contract within 15 days following the date of this notice by paying late payments and repossession costs, as well as any additional costs we may incur in connection with the repossession of the vehicle. As of the date of this letter, the amount required to reinstate the contract is as follows:

| | |
|---|---|
| Delinquent installment payments | $ 2867.60 |
| Plus accrued or unpaid late charges | $ 119.50 |
| Plus expenses of repossession and preparing the vehicle for sale | $ 325.00 |
| Plus storage charges for the vehicle (up to $3/day, not to exceed $100) | $ 0.00 |
| Equals amount required to reinstate contract | |
| ("Reinstatement Amount") | $ 3312.10* |

* The amount may be adjusted to include additional storage expenses, Finance Charges or late fees, and any additional payments that come due before you make the payment. In order to get back your vehicle you must provide us with evidence of insurance on the vehicle as required by your contract.

If you reinstate the contract, we will release possession of the vehicle to you. If you do not reinstate the contract and the sale price of the vehicle is insufficient to pay the Reinstatement Amount, you may be held personally liable for any deficiency that remains.

**Right to Public Sales:** If you have paid at least 50% of your vehicle's cash price, you may require us to sell your vehicle at public auction by giving us written notice at the address below within the 15-day reinstatement/redemption period and depositing with us $15.

If you have paid less than 50% of the cash sale price of the motor vehicle, we may sell the motor vehicle at a public or bona fide private sale or at a public auction, unless you, within the 15 day redemption period, request in writing a public sale or auction and deposit with us the sum of $15 to cover the cost of the sale or auction.

**Contact/ Payment Information:** Payment, notices or questions about your right to reinstate/redeem or to request a public sale should be directed to:
Wells Fargo Financial, Inc.
3210 Lake Emma Rd. Ste. #2000
Lake Mary, FL 32746
866-242-6817
8:00 AM to 8:00 PM (Eastern Time)


Redemption Group

THE LAWS OF SOME STATES REQUIRE US TO INFORM YOU THAT THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NOTWITHSTANDING THE ABOVE DISCLOSURE, IF YOU FILED BANKRUPTCY, THIS IS NOT AN ATTEMPT TO COLLECT A DEBT OR A DEMAND FOR PAYMENT. WE HAVE A SECURITY INTEREST IN THE COLLATERAL THAT CONTINUES AFTER BANKRUPTCY, AND THIS NOTICE IS PROVIDED FOR YOUR INFORMATION UNDER STATE REPOSSESSION LAWS.

Certified No: 91 7108 2133 3932 8436 9196
Return Receipt Requested


DC-4022-01/04

RECEIVED   2007/03/08  10:34:43

Exhibit G

COLUMBUS OH 46

CSI 13 NOV 2006 PM 8 T
POB 091014
COLUMBUS, OH 43209   11 8 0 U.S. POSTAGE   P B 5515 4548
4 5 3 2 8 00.24 0 NOV 13 2006
4 8 7 1 MAILED FROM ZIP CODE   4 3 2 2 7

Anthony Price
4978 Just St
Washington DC 20019

DO NOT FORWARD

||.|.||..||....||||..||.|||.||.||.||..|.||..|||.||..||.||.||

Warranty repair and Part Order #:  RP 1354

Issued under Repair Bulletin  S#:  39577

Please contact your Customer Service

Representative  Tiffany

regarding the latest information from the

factory.

**PLEASE** USE OUR TOLL-FREE SERVICE LINE

**1-800-780-0097**











**CERTIFIED MAIL**

7001 2510 0002 1426 3004

O'TOOLE, ROTHWELL, NASSAU & STEINBACH
ATTORNEYS AT LAW
1350 CONNECTICUT AVENUE, N.W.
SUITE 200
WASHINGTON, D.C. 20036

**RETURN RECEIPT REQUESTED**

TO:

CSC - Lawyers Incorporating
Service Company
7 St. Paul Street, Suite 1660
Baltimore, MD 21202

EN-1758
RWR

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Anthony Price

11001

11001

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**

Wells Fargo Financial Maryland, Inc.

88888

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark H. Steinbach
O'Toole, Rothwell, Nassau & Steinbach
1350 Connecticut Avenue, NW, Suite 200
Washington, DC 20006
(202) 775-1550

Case: 1:07-cv-01758
Assigned To : Roberts, Richard W.
Assign. Date : 10/1/2007
Description: General Civil

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
   Plaintiff

○ 2 U.S. Government
   Defendant

○ 3 Federal Question
   (U.S. Government Not a Party)

◉ 4 Diversity
   (Indicate Citizenship of
   Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/
      Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency
      Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If
      Administrative Agency is Involved)

○ **D. Temporary Restraining
      Order/Preliminary
      Injunction**

Any nature of suit from any category may
be selected for this category of case
assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**          **OR**          ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or
      defendant
☐ 871 IRS-Third Party 26
      USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure
      of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational
      Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC
      Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced &
      Corrupt Organizations
☒ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/
      Exchange
☐ 875 Customer Challenge 12 USC
      3410
☐ 900 Appeal of fee determination
      under equal access to Justice
☐ 950 Constitutionality of State
      Statutes
☐ 890 Other Statutory Actions (if
      not administrative agency
      review or Privacy Act

**No Summons Issued**

| ○ **G.** *Habeas Corpus/* *2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** ☐ **890 Other Statutory Actions (if Privacy Act)** *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** ☐ **720 Labor/Mgmt. Relations** ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** ☐ **740 Labor Railway Act** ☐ **790 Other Labor Litigation** ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** ☐ **443 Housing/Accommodations** ☐ **444 Welfare** ☐ **440 Other Civil Rights** ☐ **445 American w/Disabilities-Employment** ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** ☐ **120 Marine** ☐ **130 Miller Act** ☐ **140 Negotiable Instrument** ☐ **150 Recovery of Overpayment & Enforcement of Judgment** ☐ **153 Recovery of Overpayment of Veteran's Benefits** ☐ **160 Stockholder's Suits** ☐ **190 Other Contracts** ☐ **195 Contract Product Liability** ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

○ 1 Original Proceeding   ◉ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Defendant removes this consumer credit action on the basis of diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  October 1, 2007   SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.