IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY PRICE<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>WELLS FARGO FINANCIAL MARYLAND, INC.,<br><br>　　　　Defendant. | Civil Action No.:  07-CV-01758-RWR |

**MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION**

　　Defendant Wells Fargo Financial Maryland, Inc. ("Wells Fargo"), by and through the undersigned counsel and pursuant to 9 U.S.C. § 1 *et seq.*, moves the Court for an Order compelling arbitration and dismissing or, in the alternative, staying this action.  In support of its Motion, Wells Fargo respectfully refers to, and incorporates by reference, its Statement of Points and Authorities in Support of Motion to Compel Arbitration and Dismiss or Stay Action, filed simultaneously herewith.

DATED: October 23, 2007

                NELSON MULLINS RILEY & SCARBOROUGH LLP

                By: /s/   Anitra D. Goodman
                   Anitra D. Goodman (D.C. Bar No. 484434)
                   101 Constitution Avenue, Suite 900
                   Washington, DC  20001
                   Phone: (202) 712-2891
                   Fax: (202) 712-2840
                   E-mail address:  anitra.goodman@nelsonmullins.com

                Counsel for Defendant Wells Fargo Financial Maryland, Inc.

OF COUNSEL:

Matthew P. McGuire
N.C.S.B. No. 20048
Nelson Mullins Riley & Scarborough LLP
GlenLake One
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Phone:  (919) 877-3800
Fax:  (919) 877-3799
E-mail address:  matt.mcguire@nelsonmullins.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically. Notice of filing will be sent to the following by operation of the ECF system:

Mark H. Steinbach, Esq.
O'Toole, Rothwell, Nassau & Steinbach
1350 Connecticut Avenue, NW
Suite 200
Washington, DC 20006
steinbach@otrons.com


DATED: October 23, 2007

/s/ Anitra D. Goodman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTHONY PRICE<br><br>　　　Plaintiff,<br><br>　　vs.<br><br>WELLS FARGO FINANCIAL MARYLAND, INC.,<br><br>　　　Defendant. | Civil Action No.:  07-CV-01758-RWR |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION

　　Pursuant to Local Rule 7(a), Defendant Wells Fargo Financial Maryland, Inc. ("Wells Fargo"), through the undersigned counsel, respectfully submits this Statement of Points and Authorities in Support its Motion to Compel Arbitration and Dismiss or Stay Action.  The Note and Security Agreement executed by Plaintiff Anthony Price ("Plaintiff") encompasses the dispute at issue and requires Plaintiff to submit his claims to binding arbitration rather than to avail himself of judicial remedies.

　　Accordingly, Wells Fargo seeks two orders.  First, Wells Fargo seeks an Order, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"), compelling Plaintiff to arbitrate all claims in the case against Wells Fargo in accordance with the Arbitration Agreement Plaintiff entered into with Wells Fargo.  Second, Wells Fargo seeks an Order,

pursuant to 9 U.S.C. § 3 of the FAA, dismissing this action with prejudice, or staying the proceedings in this action.

## STATEMENT OF FACTS

On, January 5, 2002, Plaintiff purchased an automobile from CarMax in Glen Allen, Virginia. Plaintiff executed a Note and Security Agreement with the dealership that was assigned to Wells Fargo Financial Acceptance, Inc. (Compl. Exh. A). On September 18, 2004, Plaintiff refinanced the balance of the original note and executed a new Note and Security Agreement with Wells Fargo Financial Acceptance Maryland 1, Inc. See Note, attached hereto as Exh. A. This Note contained an acknowledgement of a separate Arbitration Agreement, which Plaintiff also executed on September 18, 2004. *Id*. The Arbitration Agreement provides as follows:

> (1) Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort or otherwise) arising out of or relating to your Loan Agreement, or any prior or future dealings between us, resolved by binding arbitration. If any party covered by this Agreement elects arbitration, that election is binding on all parties to this Agreement.
>
> . . .
>
> (3) The parties agree the Loan Agreement involves "interstate commerce" and shall be governed by the Federal Arbitration Act ("FAA"), Title 9, United States Code, and this Agreement shall be governed by the provisions of the FAA.
>
> . . .
>
> (5) **LIMITATION OF RIGHTS: IF ARBITRATION IS ELECTED BY ANY PARTY UNDER THIS AGREEMENT: (A) YOU WILL NOT HAVE THE RIGHT TO GO TO COURT TO HAVE A JURY TRIAL; (B) YOU WILL NOT HAVE THE RIGHT TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE RULES; (C) YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE**

**AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION.**

*Id*.

Plaintiff alleges that Wells Fargo violated closed-end credit, consumer protection, Uniform Commercial Code, and self-help repossession laws in connection with the automobile financed by Wells Fargo and secured by the Note and Security Agreement.

## ARGUMENT

**I.    THE FAA REQUIRES THE ENFORCEMENT OF ARBITRATION AGREEMENTS.**

Through the FAA, Congress established a strong federal policy favoring arbitration and requiring "rigorous enforcement" of agreements to arbitrate. *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Perry v. Thomas*, 482 U.S. 483, 489 (1987). The "liberal federal policy favoring arbitration agreements," manifested in Section 2 of the FAA and the FAA as a whole, is a policy fundamentally guaranteeing the enforcement of private contractual arrangements. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As the United States Supreme Court observed, "[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered," a concern which "requires that we rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

Where the FAA governs, and where the dispute is encompassed by the terms of a written arbitration provision, a court called upon to do so must compel arbitration of that dispute. Courts are not at liberty to ignore or decline to enforce a valid arbitration agreement. *See* 9 U.S.C. § 4; *Moses H. Cone*, 460 U.S. at 24–25. "By its terms, the Act leaves no place

3

for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. Moreover, the "Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

## II.  THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRATION CLAUSE AT ISSUE IN THIS CASE.

The Federal Arbitration Act provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable ..." 9 U.S.C. § 2. In *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995), the United States Supreme Court held that, for purposes of determining whether a written arbitration provision in a contract was a transaction "involving commerce" such that the FAA applied, the word "involving" was broad and the functional equivalent of "affecting commerce," which "normally signaled Congress' intent to exercise its Commerce Clause powers" in full.

In this case, Plaintiff's claims are subject to arbitration pursuant to the FAA, the terms of the Note and Security Agreement, and the Arbitration Agreement executed on September 18, 2004. First, the parties' contract and Arbitration Agreement contain express arbitration provisions and specifically note that the transaction involves interstate commerce. As shown in Wells Fargo's Notice of Removal, Plaintiff is a citizen of the District of Columbia, and Wells Fargo Financial Maryland, Inc. is a citizen of Maryland. Moreover, the loan documents were produced in Greenbelt, Maryland, and funds for the loan originated outside the District of

4

Columbia. Thus, the loan transaction indisputably involves interstate commerce and the FAA is accordingly applicable here.

Second, the parties' dispute falls within the scope of the arbitration provision. The provision requires arbitration of "any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort or otherwise) arising out of or relating to [the] Loan Agreement." Plaintiff filed this lawsuit to recover compensatory and punitive damages and injunctive relief for Wells Fargo's alleged failure to comply with credit grantor provisions and repossession laws in relation to Plaintiff's Note and Security Agreement with Wells Fargo. Consequently, Plaintiff's claims are subject to arbitration.

### III.   THE COURT SHOULD COMPEL ARBITRATION AND DISMISS OR STAY THIS ACTION.

When an arbitration agreement governed by the FAA covers claims that have been asserted in a lawsuit, the court having jurisdiction over the case must compel arbitration and either dismiss the action or stay further judicial proceedings until the arbitration has been completed. 9 U.S.C. §§ 3–4; *Shearson/Am. Express*, 482 U.S. at 226; *Moses H. Cone*, 460 U.S. at 1. Additionally, under Sections 3 and 4 of the FAA, motions to compel arbitration and to dismiss or stay are to be summarily granted. *See Moses H. Cone*, 460 U.S. at 22 ("The [FAA] provides two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, 9 U.S.C. § 4. Both of these sections call for an expeditious and summary hearing, with only restricted inquiry into factual issues.").

Thus, courts are required to give full effect to "Congress' clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as

5

quickly and easily as possible." *Id*. at 22. As such, this Court should grant the instant motion and issue an order to dismiss this action. *See Nelsen v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 158 (D.D.C. 2002) (citing *Cole v. Burns Int'l Sec. Servs., Inc.*, 105 F.3d 1465, 1487 (D.C. Cir. 1997); *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001)) (When all claims pending before the Court must be submitted to arbitration, judicial economy favors the dismissal of the claims, rather than the staying of the action pending arbitration). Alternatively, the Court should stay these proceedings.

## CONCLUSION

For the foregoing reasons, Wells Fargo respectfully requests that the Court compel arbitration and dismiss this action or, in the alternative, stay this litigation until the parties' arbitration concludes.

DATED:  October 23, 2007

        Respectfully submitted,

        NELSON MULLINS RILEY & SCARBOROUGH LLP

        By: /s/   Anitra D. Goodman
           Anitra D. Goodman (D.C. Bar No. 484434)
           101 Constitution Avenue, Suite 900
           Washington, DC  20001
           Phone: (202) 712-2891
           Fax: (202) 712-2840
           E-mail address:  anitra.goodman@nelsonmullins.com

        Counsel for Defendant Wells Fargo Financial Maryland, Inc.

6

OF COUNSEL:

Matthew P. McGuire
N.C.S.B. No. 20048
Nelson Mullins Riley & Scarborough LLP
GlenLake One
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Phone:  (919) 877-3800
Fax:  (919) 877-3799
E-mail address:  matt.mcguire@nelsonmullins.com

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of filing will be sent to the following by operation of the ECF system:

Mark H. Steinbach, Esq.
O'Toole, Rothwell, Nassau & Steinbach
1350 Connecticut Avenue, NW
Suite 200
Washington, DC 20006
steinbach@otrons.com


DATED: October 23, 2007

                                                               /s/ Anitra D. Goodman

# EXHIBIT A

## NOTE AND SECURITY AGREEMENT (including Loan Statement)

**IDENTIFICATION OF PARTIES:** Except where we indicate otherwise, we use the words you and your to mean the Borrowers and anyone else who signs this Note and Security Agreement. The words we, us, and our refer to the Creditor.

YOUR ACCOUNT IS PAYABLE TO THE CREDITOR SHOWN BELOW

WELLS FARGO FINANCIAL ACCEPTANCE
MARYLAND 1, INC.
7701 GREENBELT RD STE 107
GREENBELT, MD        20770

| Account Number | Type |
|---|---|
| 2091439 | R |

Borrowers (Names and Address):
PRICE,,ANTHONY,
4978 JUST STREET
WASHINGTON,DC,20019

Additional Borrowers/Signers:

| Date of Loan | First Payment Due Date | Others Same Day of Each Month | Final Payment Due Date | First Payment | Other Payments | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 09/18/04 | 10/18/04 | | 03/18/08 | $ 478.00 | $ 478.00 | 42 |

**14.24** % ANNUAL PERCENTAGE RATE: the cost of your credit as a yearly rate.
$ **4337.70** FINANCE CHARGE: the dollar amount the credit will cost you.
$ **15738.30** Amount Financed: the amount of credit provided to you or on your behalf.
$ **20076.00** Total of Payments: the amount you will have paid after you have made all payments as scheduled.

**Late Charge:** If any part of a payment is more than 7 days late, you will be charged a late charge equal to 5% of the full payment.

**Prepayment:** If you pay off early, you may be entitled to a refund of part of the finance charge.

**Security:** You are giving us a security interest in the property indicated below:
[X] Motor Vehicle(s)  [ ] Household Goods  [ ] Household Goods & Sports/Recreation Equipment
[ ] Real Estate  [ ] This Loan is Unsecured  [ ] The Goods or Property Being Purchased
[ ] Other Property: _____

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**ITEMIZATION OF AMOUNT FINANCED**
$ NONE PREPAID FINANCE CHARGE
$ 15738.30 AMOUNT FINANCED (Sum of amounts shown below)
$ NONE AMOUNT PAID ON YOUR ACCOUNT
$ NONE AMOUNT PAID TO YOU FOR AUTO SECURITY PLAN*
$ 699.30 AMOUNT GIVEN TO YOU DIRECTLY
AMOUNTS PAID TO OTHERS ON YOUR BEHALF
$ NONE To Ins. Co. for Life Insurance (Single)*
$ NONE To Ins. Co. for Life Insurance (Joint)*
$ NONE To Ins. Co. for Accident & Health Insurance (Single)*
$ NONE To Ins. Co. for Accident & Health Insurance (Joint)*
$ NONE To Ins. Co. for Invol. Unemployment Insurance*
$ 46.00 To Public Officials for Security Interest Fees
$ NONE To Appraiser for Appraisal
$ NONE To Ins. Co. for Title Insurance
$ NONE For Title Exam To _____
$ NONE To Public Officials for Documentary Stamp Tax
$ NONE To Public Officials for County Transfer Tax
$ 14,993.00 To WFFA
$ _____ To _____
$ _____ To _____
$ _____ To _____
[ ] When this box is checked, itemization is continued on attached addendum.
* We may be retaining a portion of this amount.

$ 15738.30 Principal Amount of Loan
14.24 % Agreed Rate of Interest Per Year
$ 4337.70 Interest
$ NONE Loan Fee (Prepaid Finance charge)

Closed By [signature: EP]

**YOUR PROMISE TO PAY AND THE TERMS OF REPAYMENT.** To repay your loan, you promise to pay us the amount shown above as Total of Payments which includes Interest at the Agreed Rate of Interest Per Year and also includes any Loan Fee (Prepaid Finance Charge) shown above as well as any other charges which are shown above in the Itemization of Amount Financed box. Such Loan Fee and other charges are authorized by Section 12-1005 of the Commercial Law Article of the Annotated Code of Maryland. Interest is computed on the Principal Amount of Loan. The Principal Amount of Loan includes the Amount Financed and any Loan Fee. Any Loan Fee is withheld from the proceeds of your loan. The Finance Charge includes Interest plus any Loan Fee. You'll pay the Total of Payments to us at our office in instalments each month according to the terms of repayment shown above.

**YOU GRANT US A SECURITY INTEREST.** You give us a security interest in your property described below. This property is called collateral. You also give us a security interest in any accessions to and proceeds of the collateral. Accessions are goods installed in or attached to the collateral. Proceeds are money or property due to you from the loss, destruction or sale of the collateral. You also give us a security interest in any amount due to you under any credit insurance purchased with this loan and listed in the Itemization of Amount Financed, including any refund of unearned premium for the insurance. The purpose of this security interest is to protect us if you don't repay your loan described above or if you break any promise made in this Note and Security Agreement.

**THE PARAGRAPHS CHECKED BELOW DESCRIBE THE COLLATERAL COVERED BY THIS NOTE AND SECURITY AGREEMENT:**

[ ] (a) All of the household goods and sports/recreation equipment of every kind now located at the Borrowers' residence address shown above, except those items prohibited by the Federal Trade Commission's Credit Practices Rule (explained in the paragraph on the reverse side titled "Credit Practices Rule"). If you have more than one radio or television, you are excluding the least valuable radio and least valuable television and giving us a security interest in the remaining radio(s) and television(s).

[ ] (b) The following property located at the Borrowers' residence address indicated above:

[X] (c) Motor vehicle(s) described as follows:

| Year | Make | Model | Serial Number |
|---|---|---|---|
| 2000 | ISUZU | TROOPER | JACDJ58X4Y7J12380 |

**REVERSE SIDE.** The additional terms printed on the reverse side are a part of this Note and Security Agreement, and you are bound by them in the same manner as if they were printed on the front page of this Note and Security Agreement.

**SIGNATURES.** If you agree to be bound by the terms of this Note and Security Agreement, please sign your name below. All persons signing this Note and Security Agreement will be fully responsible for paying it in full. All signatures are "under seal," which extends the time that we have to bring an action to collect this loan if you default. By signing below, you are authorizing disbursement of the loan proceeds as shown above in the "Itemization of Amount Financed" box.

**YOU ACKNOWLEDGE THE EXISTENCE OF A SEPARATE ARBITRATION AGREEMENT SIGNED CONCURRENTLY WITH THIS NOTE AND SECURITY AGREEMENT, AND YOU SPECIFICALLY AGREE TO BE BOUND BY ITS TERMS.**

(Seal) [signature] SIGN HERE   (Seal) _____ SIGN HERE
(Seal) _____ SIGN HERE   (Seal) _____ SIGN HERE

**COLLATERAL OWNER'S GRANT OF A SECURITY INTEREST**
In this Collateral Owner's Grant of a Security Interest, the word you means anyone who signs below. The words we and us refer to the Creditor. To secure all of the Borrowers' agreements under this Note and Security Agreement, you give us a security interest in the property you own described in the description of collateral above ("collateral") and you agree that we have rights in the collateral as provided in this Note and Security Agreement. However, you assume no personal responsibility for the payment of any amounts owed under this Note and Security Agreement.

SIGN HERE _____   SIGN HERE _____

MD-2002-0304 (AUT)

## ADDITIONAL TERMS

**RIGHT TO PREPAY LOAN – REFUND OF INTEREST.** You can prepay your loan any time. If your loan is prepaid in full, we'll refund any unearned interest using the actuarial method in accordance with Section 12-1009 of the Commercial Law Article of the Annotated Code of Maryland. No refund will be made if the unearned interest is less than $5.00. The Loan Fee, if any, is fully earned on the date of your loan and is not subject to refund.

**LATE CHARGE.** If you're more than 7 days late in paying any part of an instalment, you promise to pay a late charge equal to 5% of the full instalment.

**DEFAULT – ENTIRE BALANCE DUE.** If you don't pay an instalment on time or if you violate the terms of this Note and Security Agreement or of any other security instrument that secures the payment of this Note and Security Agreement, you'll be in default. When that happens, you agree that without giving you advance notice, we can require you to pay the remaining balance of this Note and Security Agreement at once (less any required refund of interest). We can also use any remedies available to us under the Uniform Commercial Code.

**LOAN FEE.** If a Loan Fee amount is shown on the reverse side, you certify that this Note and Security Agreement is secured by a lien on residential real property.

**COLLECTION COSTS.** If you default on your loan, you agree to pay all court and other collection costs which are incurred by us and relate to your default, including reasonable attorney's fees not to exceed 15% of the amount due where the attorney is not one of our salaried employees.

**RETURN CHECK CHARGE.** If a payment on this loan is made with a check that is dishonored on the second presentment for any reason (except an error by us), you agree to pay us a $15 charge.

**OWNERSHIP OF COLLATERAL.** You agree that you own the collateral. You also agree that no one else has any interest in or claim against the collateral which has not been disclosed to us in writing. You promise not to sell, lease or give the collateral to anyone else. You will keep the collateral free from claims of others (for example, taxes, liens, and security interests). If you fail to keep the collateral free from claims of others as required under this section, we may pay the claims (but we are not required to). You will pay us the cost of any claims we pay when we ask for payment.

**INSURANCE ON COLLATERAL.**

**YOU MUST KEEP THE COLLATERAL INSURED.** You will keep the collateral insured against physical damage and loss until you pay this loan in full. Collision and comprehensive or all risk insurance would satisfy this requirement. You may buy the insurance from anyone you want, but the insurance company, the amount of insurance and the deductible must be acceptable to us. You will have the insurance company name us in the policy as a secured party, have the policy provide for payment to us in case of loss and will require the insurance company to notify us in writing at least 10 days before cancelling coverage. You will give us a copy of the policy or give us other proof of the required insurance acceptable to us.

**COLLATERAL PROTECTION INSURANCE.** If you fail to keep the collateral insured as required or fail to give us proof of the required insurance acceptable to us, we may, but are not required to, buy insurance (Collateral Protection Insurance) to protect our interest in our collateral. The Collateral Protection Insurance may, but need not, also protect your interest. If you have not given us proof that the required insurance was in force as of the date of this loan, the effective date of the Collateral Protection Insurance can be as early as the date of this loan, even if the certificate of insurance for the Collateral Protection Insurance is not issued until later. If you have given us proof that the required insurance was effective as of the date of this loan, the effective date of the Collateral Protection Insurance can be as early as the date the required insurance expired or was cancelled, even if the certificate of insurance for the Collateral Protection Insurance is not issued until later.

**PAYMENT FOR COLLATERAL PROTECTION INSURANCE.** You are responsible for the cost of any Collateral Protection Insurance purchased by us. If we buy Collateral Protection Insurance, we may add the premium for the Collateral Protection Insurance to the unpaid balance of your loan and increase your monthly payment to pay the premium during the remaining term of the Collateral Protection Insurance; or we may require you to pay the full premium for the Collateral Protection Insurance immediately.

**CANCELLATION OF COLLATERAL PROTECTION INSURANCE.** If we buy Collateral Protection Insurance, you may still obtain the required insurance from the insurance company or agent of your choice. If you do this and give us proof of the required insurance acceptable to us, we will cancel the Collateral Protection Insurance as of the effective date of the insurance you obtain. If your account is paid off while the Collateral Protection Insurance is in effect, we will cancel the Collateral Protection Insurance as of the date your account is paid off. If we cancel the Collateral Protection Insurance, we will credit any refund of unearned insurance premium to your account. You will remain obligated to pay any earned insurance premium.

**IT IS BETTER FOR YOU TO GET YOUR OWN INSURANCE.** If we buy Collateral Protection Insurance, it will probably be more expensive and provide less insurance protection than insurance you could obtain from the insurance company or agent of your choice. The amount the Collateral Protection Insurance will pay may be less than the unpaid balance of your loan and may be less than the full value of the collateral. We urge you to contact an insurance agent to assist you in evaluating your own insurance needs and to advise you whether other, less expensive, insurance is available.

**REPLACEMENT OF COLLATERAL.** If any collateral is damaged or lost, you will notify us immediately of the loss or damage. You agree to repair or replace the property promptly. You will instruct any insurance company and anyone else responsible for the damage or loss to pay any money due as a result of the damage or loss (including but not limited to, insurance proceeds) to us directly instead of to you and us jointly. We may, at our option, either release these payments to you to repair or replace the collateral or apply these payments to your debt under this loan. You agree that we won't release any amount to you if you are in default under this loan. If any amount is released to you, you agree that you must repair or replace the collateral to our satisfaction and must sign any documents or do whatever else is necessary to give us a security interest in the repaired or replaced collateral.

**WAIVER AND DELAY IN ENFORCEMENT.** You agree to the following: We may give up ("waive") or delay enforcement of our rights under this loan without losing them. If we release any of you from this loan, the rest of you will not be released. We do not have to give you notice of any waiver, delay or release. We do not have to use our legal remedies against any one of you before we use our legal remedies against any of the rest of you. We do not have to take possession of any property which secures this loan before we use our other legal remedies against you. You will not be released from your obligations under this loan if we exchange or release any property which secures this loan. You agree to any renewals of this loan and any extensions that we give any of you.

**CREDIT PRACTICES RULE.** The Federal Trade Commission has issued a Credit Practices Rule that may limit your right to give us a security interest in certain property. If paragraph (a) in the description of collateral on the reverse side is checked, then the Credit Practices Rule applies to this security agreement. If the Rule applies, it provides that we cannot take a security interest in the clothing, furniture, appliances, one radio and one television, linens, china, crockery, kitchenware, and personal effects (including wedding rings) of the Borrower and his or her dependents; however, this Rule does not prohibit us from taking a security interest in any other household goods including but not limited to works of art, electronic entertainment equipment (other than one television and one radio), items acquired as antiques, and jewelry (other than wedding rings). Also, this Rule does not prohibit us from taking a purchase-money security interest of the nature permitted by the Rule in any household goods.

**ADDITIONAL SIGNERS.** If you sign this Note and Security Agreement and are not a Borrower, you agree to remain responsible for this loan even if we fail to notify you that the Note and Security Agreement hasn't been paid. You also agree to remain responsible if we change the terms of payment or release any security without notifying you. A person who signs only in the Collateral Owner's Grant of a Security Interest box has no personal responsibility for the payment of any amounts owed under this Note and Security Agreement.

**LOAN STATEMENT RECEIVED.** If you are a Borrower, you acknowledge receiving a completely filled-in Note and Security Agreement (including Loan Statement).

**STATE LAW.** This loan and Note and Security Agreement are governed by the laws of Maryland. This loan is made under Title 12, Subtitle 10 of the Commercial Law Article of the Annotated Code of Maryland.

**INFORMATION REPORTED TO CREDIT BUREAUS.** If you believe we have reported incorrect information about your account to a credit bureau, you may notify us by writing to us at Department A, 206 8th Street, Des Moines, IA 50309. Please include your account number and a description of the information that is incorrect.

---

☐ If this box is checked, the following Notice applies:

**NOTICE**

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

MD-2002-0304 (AUT)

**ARBITRATION AGREEMENT**

This Arbitration Agreement ("Agreement") is between **Wells Fargo Financial Acceptance Maryland, Inc.; Wells Fargo Financial Acceptance Maryland 1, Inc.** (collectively "Us" or "We" or "Our"), including our assignees, agents, employees, officers, directors, shareholders, parent companies, subsidiaries, affiliates, predecessors and successors, and the Borrower ("You" or "Your").

The parties agree as follows:

(1) **RIGHT TO ELECT TO ARBITRATE:** Any party covered by this Agreement may elect to have any claim, dispute or controversy ("Claim") of any kind (whether in contract, tort or otherwise) arising out of or relating to your Loan Agreement, or any prior or future dealings between us, resolved by binding arbitration. If any party covered by this Agreement elects arbitration, that election is binding on all parties to this Agreement. A Claim may include, but shall not be limited to, the issue of whether any particular Claim must be submitted to arbitration, or the facts and circumstances involved with your signing of this Agreement, or your willingness to abide by the terms of this Agreement or the validity of this Agreement. Any such election may be made at any time. All parties agree that no party has to initiate an arbitration proceeding before exercising remedies of self-help repossession, non-judicial foreclosure, replevin or other similar remedies. In addition, any party covered by this Agreement retains the right to seek relief in small claims court for any Claim within the scope of the small claims court's jurisdiction. The filing of a lawsuit or the pursuit of other self-help remedies does not mean that any party has waived the right to subsequently elect to submit a Claim to arbitration.

(2) **RULES:** If arbitration is elected, it will be conducted pursuant to the rules of the American Arbitration Association which are in effect on the date a dispute is submitted to the American Arbitration Association. Information about the American Arbitration Association, its rules, and its forms are available from the American Arbitration Association on the internet at http://www.adr.org or from the American Arbitration Association at 335 Madison Avenue, Floor 10, New York, New York 10017-4605. Any hearing will take place in the county of your residence. The arbitrator shall be neutral and any party may require that the arbitrator be a retired federal judge. The arbitrator shall apply all applicable law and shall provide a written decision that includes findings of fact and conclusions of law. Judgment upon the award issued by the arbitrator may be entered in any court having jurisdiction. There shall be no authority for any claims to be arbitrated as a class action or consolidated with the claims of other persons.

(3) **FEDERAL ARBITRATION ACT:** The parties agree the Loan Agreement involves "interstate commerce" and shall be governed by the Federal Arbitration Act ("FAA"), Title 9, United States Code, and this Agreement shall be governed by the provisions of the FAA.

(4) **FEES & COSTS:** If you start an arbitration proceeding, you agree to pay the initial filing fee required under the Rules up to a maximum of $125. The American Arbitration Association may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees. We agree to pay for any part of the filing fee and any deposit required under the Rules in excess of $125. We also agree to pay the costs of the arbitration proceeding. If we start an arbitration proceeding, we will pay the filing fee, any deposit required under the Rules, and the costs of the arbitration proceeding. Each party shall be responsible for their own attorney, witness, and expert fees and costs unless the Loan Agreement (or applicable law) provides otherwise.

(5) **LIMITATION OF RIGHTS: IF ARBITRATION IS ELECTED BY ANY PARTY UNDER THIS AGREEMENT: (A) YOU WILL NOT HAVE THE RIGHT TO GO TO COURT OR TO HAVE A JURY TRIAL; (B) YOU WILL NOT HAVE THE RIGHT TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE RULES; (C) YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION; (D) THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING WITH LIMITED RIGHTS TO APPEAL; (E) THIS AGREEMENT SUPERSEDES ANY PRIOR ALTERNATIVE DISPUTE RESOLUTION AND/OR ARBITRATION AGREEMENT THAT MAY EXIST BETWEEN YOU AND US; (F) IF ANY PROVISION OF THIS AGREEMENT IS HELD TO BE INVALID, THE INVALID PROVISION SHALL NOT AFFECT THE ENFORCEMENT OF ANY OTHER PROVISION OF THIS AGREEMENT.**

READ THIS ARBITRATION AGREEMENT CAREFULLY. IT LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO HAVE A JURY TRIAL.

_____  9/18/04
Borrower                        Date

_____  _____
Borrower                        Date

Wells Fargo Financial Acceptance Maryland, Inc.
Wells Fargo Financial Acceptance Maryland 1, Inc.

By: _____  9/18/04
                           Date

Title: Credit Manager

MD-118-0302 (AUT)                                   **BRANCH COPY**

| | |
|---|---|
| ANTHONY PRICE<br><br>   Plaintiff,<br><br>  vs.<br><br>WELLS FARGO FINANCIAL MARYLAND, INC.,<br><br>   Defendant. | Civil Action No.:  07-CV-01758-RWR<br><br>**ORDER** |

   This matter is before the Court on the motion of Defendant Wells Fargo Financial Maryland, Inc. ("Wells Fargo") to compel arbitration and dismiss, or stay this action. After considering all documents and briefs filed by the parties, this Court finds the Arbitration Agreement encompasses the disputes at issue in this case and requires arbitration. Accordingly, it is hereby

   ORDERED that Wells Fargo Financial Maryland, Inc.'s Motion to Compel Arbitration is GRANTED, and the action is hereby DISMISSED with prejudice.

   IT IS SO ORDERED.


This ___ day of _____, 2007.


                        _____
                          United States District Judge